UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE J. BALOGH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 CV 862 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| DEUTSCHE BANK NATIONAL TRUST | ) | |
| COMPANY, OCWEN LOAN SERVICING, | ) | |
| LAW OFFICES OF IRA T. NEVEL, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lawrence Balogh filed this action against Deutsche Bank, Ocwen Servicing, and the Law Offices of Ira Nevel, alleging a variety of federal and state claims, in connection with Deutsche Bank's foreclosure action brought against Balogh in Illinois State Court. R. 1, Compl.[1] In August 2016, Deutsche Bank received a Judgment of Foreclosure against Balogh in the Circuit Court of Cook County. R. 14, Def. Deutsche's Br., Exh. 2. Balogh alleges a variety of federal and state law claims: violations of the Real Estate Settlement Procedures Act (RESPA), 12 C.F.R. § 1024.36(d); the Truth in Lending Act (TILA), 15 U.S.C. § 1635; the Illinois Consumer Fraud Act (ICFA), 815 ILCS 505/2; and a conspiracy to commit fraud.[2] Now, Defendants move to dismiss all claims, arguing that (1) there is no

---

[1]Citations to the docket are referred to with an "R." followed by the entry number and, if appropriate, a page or paragraph number.
[2]This Court has subject matter jurisdiction over the federal law claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, because they form part of the same case or controversy as the federal claims.

subject matter jurisdiction under the *Rooker-Feldman* doctrine; and (2) even if there is jurisdiction, the allegations do not state a claim. Def. Deutsche Mot. Dismiss ¶¶ 3-4[3]; Def. Nevel's Br. at 1. For the reasons below, the motion to dismiss the federal law claims is granted, and the Court relinquishes supplemental jurisdiction over the state law claims.

## I. Background

For the purpose of deciding this motion, the Court accepts the allegations in the Complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In May 2005, Balogh took out an adjustable-rate mortgage from IndyMac Bank, FSB to buy his Brookfield, Illinois home. Compl. ¶ 14. In July 2008, IndyMac Bank failed and closed, and the Federal Deposit Insurance Corporation (FDIC) was appointed as the receiver. *Id.* ¶ 17. In June 2012, the Law Offices of Ira T. Nevel prepared paperwork assigning and transferring Balogh's mortgage to Deutsche Bank. Compl. ¶ 22. Nevel attested that the Mortgage Electronic Registration Systems (MERS) assigned the note to Deutsche Bank in 2005, and that assignment paperwork was filed in the Cook County Recorder's office. Compl. ¶ 56. Because Nevel's office was not incorporated until 2008, Balogh alleges that a valid assignment is impossible. *Id.* ¶ 52.

---

[3]Defendant Ocwen Loan Servicing and Deutsche Bank jointly move for a motion to dismiss, and the briefing details the bases for each Defendant. For simplicity, the Court will refer to the briefing, R. 14 in the record, as Def. Deutsche's Br.

Meanwhile, Balogh made his scheduled mortgage payments up until his default in August 2008. Compl. ¶ 71; Def. Deutsche Br., Exh. A. ¶ 3(j).[4] In June 2012, Deutsche Bank, as the Trustee of the IndyMac INDX Mortgage Loan Trust, filed a state-court complaint to foreclose on the Brookfield property. Compl. ¶ 21. Balogh alleges that Deutsche and Ocwen did not review his mortgage for loss mitigation before Deutsche Bank filed its complaint for foreclosure. Compl. ¶¶ 23, 71.

In June 2016, Balogh sent notice to Ocwen Servicing that he wanted to rescind the loan. Compl. ¶ 24. Ocwen did not return any money or property at issue in the loan transaction to Balogh after receiving notice of rescission, nor did it begin the process of formally rescinding the loan. Compl. ¶¶ 45-46. The same day, he sent an official Request for Information to Ocwen seeking details about his loan, including the owner of the note, proof of any assignments, and a breakdown of fee assessments. *Id.* ¶ 25. Ocwen did not deliver the information and failed to provide a written response to Balogh that fulfilled the statutory guidelines. Compl. ¶¶ 30-33.

After the state court entered its initial judgment of foreclosure, and in light of Ocwen not responding sufficiently to his request, Balogh brought this suit in federal court in February 2017. Compl. ¶¶ 2, 3, 13. The crux of his claims is the allegation that Defendants, through a conspiracy, fraudulently "produced multiple

---

[4] Although the state-court foreclosure filings are outside the pleadings in this case, this Court may take judicial notice of matters of public record without converting the motion to dismiss into a motion for summary judgment, particularly where the facts are not subject to reasonable dispute. *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012). This Court takes judicial notice of the underlying foreclosure documents, as they are state court filings and orders as a matter of public record, which is appropriate on a motion to dismiss.

3

assignments" of his mortgage and kept the true ownership information from him. *Id.* ¶ 13. The Illinois state foreclosure case remains ongoing. Def. Nevel's Br., Exh. A. Defendants move to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim. Def. Deutsche Mot. Dismiss ¶¶ 3-4; Def. Nevel's Br. at 1.

## II. Legal Standard

Deutsche Bank and Ocwen Servicing bring their motion under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A Rule 12(b)(1) motion tests whether the Court has subject-matter jurisdiction, *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009); *Long v. ShoreBank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999), while a Rule 12(b)(6) motion tests the sufficiency of the complaint, *Hallinan*, 570 F.3d at 820; *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In order to survive a Rule 12(b)(1) motion, the plaintiff must establish that the district court has jurisdiction over an action. *United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2011), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). "If subject matter jurisdiction is not evident on the face of the complaint, [then] the ... Rule 12(b)(1) [motion is] analyzed [like] any other motion to dismiss, by assuming for the purposes of the motion that the allegations in the complaint are true." *United Phosphorus*, 322 F.3d at 946. But "if the complaint is formally sufficient but the contention is there that there is *in fact* no subject matter jurisdiction, [then] the

4

movant may use affidavits and other material to support the motion." *Id.* (emphasis in original).

The other ground that the defense advances is Rule 12(b)(6). "A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan*, 570 F.3d at 820. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

Ordinarily, claims only must meet the Rule 8(a)(2) standard. But claims alleging fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). And Rule 9(b)'s heightened pleading standard applies to fraud claims brought under the ICFA. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (citation omitted). Thus, Rule 9(b) requires that Balogh's complaint state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d

918, 923 (7th Cir. 1992) (internal quotation marks and citation omitted). Put differently, his complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli*, 631 F.3d at 441-42 (internal quotation marks and citation omitted).

### III. Analysis

### A. Standing

At the outset, Deutsche Bank and Ocwen Servicing question Balogh's ability to bring a claim at all because he lacks any Article III injury. Def. Deutsche's Br. at 10. To have standing to bring a suit, a litigant must have suffered an injury that is fairly traceable to the defendant's conduct and able to be redressed by a favorable judicial decision. *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 587-88 (7th Cir. 2016) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). Plaintiffs must allege a particularized injury-in-fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Standing is a threshold showing, and a concrete injury must "actually exist" and not be "abstract." *Spokeo,* 136 S. Ct. at 1548. For Balogh to demonstrate that he has standing, this Court looks to whether he has sufficiently alleged facts supporting concrete injuries that are fairly traceable to each of his claims. *Lujan*, 504 U.S. at 560-61.

Balogh brings claims under several federal and state laws, but Deutsche and Ocwen argue that Balogh "fail[s] to articulate any concrete injury" from the alleged statutory violations. Def. Deutsche's Br. at 10. But this is not right. First, the section of RESPA at issue, 12 U.S.C. § 2605(e)(1)(A), "imposes a duty on loan

6

servicers to respond to borrower inquiries." *Diedrich*, 839 F.3d at 587-88. As the Seventh Circuit noted in *Diedrich*, RESPA does provide for "*actual* damages" caused by the loan servicer's failure to provide information to the borrower. *Id.* at 589 (emphasis in original) (citing 12 U.S.C. § 2605(f)(1)(A)). RESPA also provides for statutory damages, up to $2000, for a pattern or practice of failing to comply with the law. § 2605(f)(1)(B). Although Balogh does not plead factual basis to infer a pattern or practice of violations (he pleads only the conclusion of a "pattern," Compl. ¶ 34), he does assert that he hired an "auditor and lawyer to persist in these efforts to obtain critical information" on the account. Compl. ¶ 36. Giving Balogh the benefit of reasonable inferences, Balogh presumably found it necessary to hire the auditor and lawyer because Ocwen would not respond with the loan information that he needed. What he paid for those services qualify as concrete injuries that establish Article III standing (whether he states an adequate claim for relief on the merits is another matter, as discussed later in the Opinion).

Moving beyond RESPA, Balogh does not really set forth a separate explanation on the concrete injuries he suffered on the other claims. *See* R. 22, Pl.'s Resp. Br. to Deutsche; R. 23, Pl.'s Resp. Br. to Nevel. Deutsche argues that Balogh lacks standing for his fraud and Home Affordable Modification Program (HAMP) claims.[5] Def. Deutche's Br. at 10-11. But the rationale for the concrete injury is the same: Balogh has had to hire a lawyer to fight the allegedly improper foreclosure. In short, Balogh alleges particularized injuries—apart and separate from his

---

[5]Deutsche in reality takes aim at Balogh's state law fraud and ICFA claims, under which his HAMP allegations fit. *See* Compl. ¶¶ 65-69.

7

foreclosure—stemming from Defendants' alleged conduct, even if his complaint *also* bemoans the foreclosure itself. Article III standing is secure.

## B. *Rooker-Feldman*

The other jurisdictional challenge that the defense brings is based on the *Rooker-Feldman* doctrine. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). This doctrine rests on the premise that the Supreme Court is the only federal court with appellate authority over state-court decisions. *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004). It prevents lower federal courts—such as this District Court—from exercising jurisdiction over cases challenging state-court judgments entered before the losing party files a federal suit. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005).

Although the core of *Rooker-Feldman* is that it bars a party from directly contesting a state-court judgment's validity in a lower federal court, the doctrine also applies when a party brings a federal case that is "closely enough related" to a state-court judgment, even if the losing party is not directly asking the lower federal court to review the state judgment. *Mains v. Citibank*, 852 F.3d 669, 675 (7th Cir. 2017). For example, if the federal plaintiff really is seeking relief for an injury that is *caused* by the state-court judgment, then in effect the plaintiff really is seeking—impermissibly—review of the judgment. *Id.* So the doctrine applies if there is "no way for the injury complained of by a plaintiff to be separated from a state court judgment." *Id.* (quoting *Sykes v. Cook Cty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 742 (7th

8

Cir. 2016)). In contrast, if a suit seeks damages for independently unlawful conduct—separate and apart from the state-court judgment—it should not be barred.[6] *See Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 773 (7th Cir. 2014).

Defendants Deutsche and Ocwen do not offer a precise analysis of how *Rooker-Feldman* bars any claim in particular. They merely contend that "most of Balogh's allegations are barred" and that "to the extent the Complaint seeks to impact" the state judgments by "characterizing the foreclosure as fraudulent," *Rooker-Feldman* bars the claims. Def. Deutsche's Br. at 11, 13. But because *Rooker-Feldman* is an issue of subject matter jurisdiction, this Court has an independent obligation to ensure that jurisdiction exists.

The first issue to consider is whether the state-court foreclosure judgment can even trigger the *Rooker-Feldman* doctrine at all. Under Illinois law, a judgment of foreclosure—despite the fact that it is called a "judgment"—is an interlocutory order. *EMC Mortg. Corp. v. Kemp*, 982 N.E.2d 152, 154 (Ill. 2012); *HSBC Bank USA v. Townsend*, 793 F.3d 771, 776 (7th Cir. 2015).[7] That is, a judgment of foreclosure does not actually "dispose of all issues between the parties and it does not terminate

---

[6]*Rooker-Feldman* is a separate doctrine from that of *res judicata*, or claim preclusion. Even in situations where *Rooker-Feldman* does not bar a claim, the principles of claim preclusion might still apply to bar the proceedings. *See Mains v. Citibank*, 852 F.3d 669, 675 (7th Cir. 2017). No arguments about claim preclusion are made in Defendants' initial briefs, and Defendants only briefly mention it in their reply without developing the argument. Def. Deutsche's Reply Br. at 6.

[7]A host of options and doctrines would be available to Defendants if Balogh brought a federal suit before any judgments had been rendered in the ongoing state suit, but *Rooker-Feldman* is not one of them. "Comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005).

9

the litigation." *See HSBC Bank USA*, 793 F.3d at 776 (quoting *EMC Mortg.*, 982 N.E.2d at 154). Other steps remain in a foreclosure case, even after the judgment of foreclosure. The lender eventually will ask for an order of possession (authorizing the lender to take possession of the property), as well as an order allowing and then approving the sale of the property. *HSBC Bank USA*, 793 F.3d at 776. Indeed, the borrower still has an opportunity to redeem the property after the foreclosure judgment is entered. *Id*. The Seventh Circuit has not definitively answered whether *Rooker-Feldman* applies to judgments of foreclosure.[8] The courts in this District are divided on the issue.[9]

---

[8]In one case, the Seventh Circuit held that claims were only barred when state court proceedings had actually ended, stating "therefore, an interlocutory ruling does not evoke the doctrine or preclude federal jurisdiction." *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005). But *TruServ* did not involve a foreclosure judgment; the interlocutory decision at issue was merely a denial of a motion to dismiss based on a forum selection clause. *Id*. More recently, the Seventh Circuit stated that the "principle that only the Supreme Court can review the decisions by the state judiciary in civil litigation is as applicable to interlocutory as to final state-court decisions." *Harold v. Steel*, 773 F.3d 884, 886 (7th Cir. 2014). But, again, that case did not involve a judgment of foreclosure, and indeed the statement was not necessary to the holding of the case, because the state-court garnishment order actually was a *final* order. *Id*. There is a risk of stretching the dictum in *Harold* too for, because the general rule is that *Rooker-Feldman* does *not* apply if there is no final judgment in state court. Even more recently, in an unpublished decision, the Seventh Circuit cited *Harold* to hold that the interlocutory nature of a foreclosure judgment is not an impediment to applying *Rooker-Feldman*. *Carpenter v. PNC Bank*, 633 F. App'x 346, 348 (7th Cir. 2016) (non-precedential disposition). But *Carpenter* is not controlling authority. Seventh Cir. R. 32.1(b).

[9]*Compare Hodges v. CIT Grp. (In re Hodges),* 350 B.R. 796, 801-03 (Bankr. N.D. Ill. 2006); *Lihter v. Pierce & Assocs.*, 2016 WL 4771370, at *2 (N.D. Ill. Sep. 13, 2016); *Schuller v. Am.'s Wholesale Lender*, 2015 WL 5316413, at *2-3 (N.D. Ill. Sep. 9, 2015); *Berry v. Wells Fargo Bank N.A.*, 2015 WL 8601866, at *2-3 (N.D. Ill. Dec. 14, 2015), *with Byrd v. Homecomings Fin. Network,* 407 F. Supp. 2d 937, 943-44 (N.D. Ill. 2005); *Medrano v. Ocwen Loan Servicing, LLC*, 2017 WL 413614, at *4 (N.D. Ill. Jan. 31, 2017). *See also, Garavito v. Suntrust Mortg., Inc.*, 2013 WL 856127, at *4-5 (N.D. Ill. Mar. 6, 2013) (noting "the purposes behind the *Rooker-Feldman* doctrine would be served by allowing an Illinois foreclosure judgment to satisfy the finality requirement" but declining to apply *Rooker-Feldman* because the "Seventh Circuit has ruled that 'an interlocutory ruling does not evoke the doctrine or preclude federal jurisdiction.'" (quoting *TruServ*, 419 F.3d at 591)).

Reasoning from first principles, ordinarily an interlocutory order cannot serve as the trigger of the *Rooker-Feldman* doctrine: lower federal courts are not permitted to "review and reverse unfavorable state-court *judgments*." *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005) (emphasis added). But judgments of foreclosure are inherently different from ordinary interlocutory orders. A judgment of foreclosure does definitively decide certain claims asserted by the lender and does grant certain requests for relief sought by the lender. In that sense, the judgment is final on those definitively decided claims and requests for relief. Indeed, nothing in the ensuing state-court litigation would change the outcome of the judgment of foreclosure. So a foreclosure judgment is actually akin to a partial judgment under Federal Rule of Civil Procedure 54(b). *See* Fed. R. Civ. P. 54(b). In other words, the foreclosure judgment enters final decisions on certain claims and requests for relief, so much so that the parties then move forward with other claims and requests for relief on the *premise* that the foreclosure judgment is in place. If, after the entry of a foreclosure judgment, a borrower sought a federal-court declaratory judgment that the lender had no interest in the property, then the district court would be undoing the foreclosure judgment to hold otherwise. That claim would be barred under *Rooker-Feldman*.

At any rate, because Balogh does not explicitly ask to vacate the foreclosure judgment, *Rooker-Feldman* applies only to the extent Balogh asks for relief "inextricably intertwined" with his state court judgment, in that the relief requested would aim to undo or undermine the judgment. *Exxon*, 544 U.S. at 286 n.1 (quoting

*Feldman*, 460 U.S. at 486). In *Mains v. Citibank,* the Seventh Circuit affirmed the dismissal of RESPA and TILA claims (among others) based on *Rooker-Feldman*, even though none of the federal-complaint allegations flatly demanded a reversal of the state-court foreclosure judgment. *Mains v. Citibank*, 852 F.3d 669, 677 (7th Cir. 2017). The borrower's RESPA claim sought an accounting on the loan to determine if the lender charged him improper late fees during the loan's life. *Id.* at 676. That aspect of the RESPA claim did not afoul of *Rooker-Feldman*, because the late fees were imposed during the payment-plan period, well before the foreclosure judgment was entered. *Id.* But the borrower also contended that the lender should not have collected on the mortgage note before providing the accounting. *Id.* That aspect of the RESPA claim was barred by *Rooker-Feldman* because "[i]n effect, it is just another way to try to undo the state court's foreclosure judgment." *Id.* The TILA claim in *Mains* was even more clearly violative of *Rooker-Feldman*, because the borrower alleged that the bank misrepresented what payments were due, failed to respond to his attempt to rescind the loan, and was not the "proper holder and servicer of the loan." *Id.* at 676-77. Remedying those alleged violations would require "disregarding or effectively vacating" the foreclosure judgment. *Id.* at 677.

Some of the relief sought by Balogh would run into the jurisdictional bar of *Rooker-Feldman*. In his complaint, Balogh outright asserts that Defendants "unlawfully st[ole]" his home. Compl. ¶ 1. But a lower federal court cannot vacate the foreclosure judgment, so Balogh cannot pursue that relief here. Similarly, any emotional distress over the foreclose judgment is again an injury arising out of the

state-court judgment, so that too cannot be recovered here. Some of the other forms of relief that Balogh seeks likewise would require, in effect, vacatur of the foreclosure judgment. For failing to properly respond to his rescission demand under TILA, Balogh seeks the "return of any money or property" in connection with his mortgage transactions and "forfeiture o[r] return of loan proceeds." Compl. ¶ 48. But ordering a return of his house or the money paid for it would directly contradict the foreclosure judgment, so *Rooker-Feldman* bars that form of relief too.

Nevertheless, some of the relief that Balogh seeks is not barred by *Rooker-Feldman*. Specifically, the RESPA claim alleges that Ocwen failed to provide information about the consideration for any assignments of the loan and when the loan was assigned. Compl. ¶ 30. In light of that alleged failure to provide information, Balogh had to hire an auditor and lawyer to ferret out the information. Compl. ¶ 36. Compensation for those expenses would not require undoing the foreclosure judgment—Balogh could concede the propriety of the foreclosure but still complain that the information should have been provided so that he did not have to expend his own money to get it. Also, Balogh seeks statutory damages under both RESPA and TILA, 12 U.S.C. § 2065(f); 15 U.S.C. § 1635(b), and those damages (again, at least for *Rooker-Feldman* purposes) would not require undoing the foreclosure judgment. So some aspects of the RESPA and TILA claims are not blocked by *Rooker-Feldman*. Having said that, as explained next, the complaint fails to adequately state claims for relief under those statutes.

## C. Count 1: RESPA Request for Information
## (Ocwen)

Under the Real Estate Settlement Procedures Act, a borrower can request certain information from the servicer of the loan. 12 U.S.C. § 2605(e)(1)(A). Specifically, a borrower can ask for information "relating to the servicing of such loan," and when the borrower makes a "qualified written request," the servicer then must respond with the information within 30 days. *Id.* § 2605(e)(1)(A), (e)(2).

Ocwen offers two arguments against the RESPA claim: (1) Balogh did not request the type of information that is covered by RESPA; and (2) even if the information that was requested was covered, Ocwen was no longer servicing the loan when Balogh made the request. Def. Deutsche's Br. at 5. On the first argument, Ocwen points out that RESPA only requires loan servicers to provide information "relating to the *servicing*" of the loan. 12 U.S.C. § 2605(e)(1)(A) (emphasis added). Ocwen then relies on the implementing regulation's definition of "servicing," which says—in part—that "servicing means receiving any scheduled periodic payments from a borrower," 12 C.F.R. § 1024.2(b). Because Balogh asked about loan assignments and the ownership of the note, Ocwen reasons that his request went beyond "servicing" information because those two subjects do not relate to "scheduled periodic payments." Def. Deutsche's Br. at 5-6.

This argument fails, because Ocwen ignores the remainder of the regulation's definition of servicing. In pertinent part, the regulation defines servicing to mean "receiving any scheduled periodic payments from a borrower … *and making the payments to the owner of the loan* or other third parties of principal and interest."

§ 1024.2(b) (emphasis added). Balogh asked for information about who formally owned his mortgage—indeed he particularly requested the "name of the owner of his loan." Compl. ¶ 25. That fits within the definition of "servicing," which includes making payments to the *owner* of the loan.

But Ocwen's second argument against the RESPA claim is a winner: Ocwen was no longer the "servicer" of Balogh's loan by the time Balogh got around to asking for information, which was around eight years *after* he stopped making payment on the loan. RESPA defines a "servicer" as "the person responsible for servicing a loan … ." 12 U.S.C. § 2605(i)(2). And remember that "servicing" means, in relevant part, "receiving any scheduled periodic payments from a borrower." § 2605(i)(3); 12 C.F.R. § 1024.2(b). So if a servicer is no longer "receiving any scheduled periodic payments from a borrower," then it is no longer servicing the loan. Once a borrower defaults on a loan, then there are no longer any scheduled periodic payments to collect. *See Jones v. Wells Fargo Home Mortgage, Inc.*, 2014 WL 3974261, at *3 (N.D. Ill. Aug. 12, 2014) (holding that, after default, "because it had ceased servicing [borrower's] Mortgage Loan within the meaning of RESPA, [the former servicer] was no longer bound by RESPA's requirement to furnish [the borrower] information"); *Bilek v. Bank of Amer., N.A.*, 2011 WL 830948, at *5 (N.D. Ill. Mar. 3, 2011) (holding that servicer was no longer "servicing" the loan after it stopped "receiving any scheduled periodic payments"). Balogh admits that he was delinquent in his payments, Compl. ¶ 71, and he does not dispute that the default occurred on August 1, 2008, Def. Deutsche Br., Exh. A. ¶ 3(j). Almost *eight years*

15

later, in June 2016, he sent the request for information to Ocwen. That is way too late, because Ocwen had not been servicing the loan, for RESPA's purposes, as of the date that he defaulted. Count 1, the RESPA claim against Ocwen, is dismissed for failure to state a claim.

### D. Count 2: Truth in Lending Act
### (Ocwen and Deutsche Bank)

The purpose of TILA is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). To that end, TILA generally authorizes borrowers to rescind certain consumer credit transactions, including a mortgage for their principal home. 15 U.S.C. § 1635(a). This means that if a third-party creditor tries to buy a homeowner's mortgage note—say from the original bank—the homeowner has a chance to rescind the transaction. Typically, the mortgager has three business days after the transaction to rescind, no questions asked. *Id.* If the lender violates TILA's disclosure requirements, then the right to rescind expands beyond the three days for unconditional rescissions. *See id.* § 1635(f). But TILA contains what is in essence a statute of repose, putting the upper limit for rescission at three years "after the date of consummation of the transaction," no matter what. *Id.*; *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 411-12 (1997) ("[Section] 1635(f) completely extinguishes the right of rescission at the end of the 3-year period."). That repose period begins to run after "the date the transaction is consummated or 'closed'—the date the

borrower signed the loan documents." *Barnes v. Homestart Mort. Corp.*, 2012 WL 4434683, at *2 (N.D. Ill. Sept. 20, 2012) (citing 12 C.F.R. § 226.2(a)(13)).

Balogh received his Truth in Lending Disclosure Statement on May 13, 2005, when the mortgage loan on his home originated. Compl. ¶ 41; Def. Deutsche's Br., Exh. A. Almost a decade later, he tried to rescind the transaction on April 20, 2015, when he sent a notice to Ocwen. Compl. ¶ 43. Those dates alone are enough to require dismissal under the statute of repose. To be sure, a statue of repose (like a limitations period) is an affirmative defense, so ordinarily a dismissal motion is not the right way to litigate it. But when the "the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense," *Hollander v. Brown*, 457 F.3d 688, 691 n. 1 (7th Cir. 2006), then a Rule 12(c) motion (for judgment on the pleadings) is a proper vehicle to decide the defense. Balogh alleges that the transaction occurred in May 2005, when he bought his house, and that he tried to rescind in April 2015—almost a decade later. The statute of repose requires dismissal.

Balogh's argument against this conclusion is not entirely clear. He seems to argue that Ocwen did not respond to his notice of rescission, and therefore—voila—the rescission was already accomplished. Pl.'s Resp. Br. to Deutsche at 4-5. Balogh then takes out of context a statement by the Supreme Court that TILA "nowhere suggests a distinction between disputed and undisputed rescissions," *Jesinoski v. Countrywide Home Loans, Inc.,* 135 S. Ct. 790, 792 (2015) (quoted by Pl.'s Resp. Br. to Deutsche at 5). So Balogh contends that even though Ocwen disputes the

*effectiveness* of the rescission, the rescission was completed. That argument ignores the crucial point in *Jesinoski* that the borrowers there sent the written notice *before* the three-year period expired. *Id.* at 791. Once the on-time notice was sent, the borrowers satisfied the notice requirement without having to file a lawsuit within the three-year period. *Id.* at 792-93. Not surprisingly, *Jesinoski* says nothing about rejecting the clear statutory command in § 1635(f) that the "right of rescission shall expire three years after the date of consummation of the transaction … ." The TILA claim was filed too late and must be dismissed.

### E. State Law Fraud Claims

With Counts 1 and 2 dismissed, the remaining claims are the state law fraud claims. Count 3 alleges that Ocwen conspired with the Law Office of Ira T. Nevel to commit fraud (presumably common-law fraud) by creating a fraudulent assignment; Count 4 alleges the same conspiracy as a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2; and Count 5 alleges that Ocwen and Deutsche Bank violated the Illinois Consumer Fraud Act by failing to give Balogh loss-mitigation options under the Home Affordable Modification Program (widely known as HAMP).[10] But now that the federal law claims have been dismissed, the usual presumption kicks

---

[10]HAMP was established by the Treasury Department amid the economic fallout of 2008. *See* Emergency Economic Stabilization Act of 2008, 12 U.S.C. § 5201 *et seq.* HAMP aims to "prevent unnecessary foreclosures by encouraging banks to restructure and refinance certain mortgages in default or in imminent risk of default." *Boyd v. U.S. Bank, N.A., ex rel. Sasco Aames Mortg. Loan Trust, Series 2003-1,* 787 F. Supp. 2d 747, 750 (N.D. Ill. 2011). What HAMP does not do is create a private right of action for consumers like Balogh, *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 559 n.4 (7th Cir. 2012) ("First, some homeowners tried to assert rights arising under HAMP itself. Courts have uniformly rejected these claims because HAMP does not create a private federal right of action for borrowers against servicers."), which is probably why Balogh recasts the alleged HAMP violations as a state law fraud claim.

in: "when the federal claims are dismissed before trial, there is a presumption that the court will relinquish jurisdiction over any remaining state law claims." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (per curiam) (citing cases). Indeed, this presumption is statutorily expressed in 28 U.S.C. § 1367(c)(3), which provides for the discretionary relinquishment of jurisdiction over state claims when the claims providing original jurisdiction (here, federal-question jurisdiction) have been dismissed. There is no good reason to hang onto the state claims: there will be no statute of limitations bar because of Illinois's savings statute, 735 ILCS 5/13-217. And the defense argued for relinquishment, R. 29, Def. Deutsche Reply Br. at 3, but Balogh did not respond. *See* Pl.'s Resp. Br. to Deutsche; Pl.'s Resp. Br. to Nevel. If and when the federal law claims are dismissed with prejudice, then this Court will relinquish supplemental jurisdiction over the state law claims.

## IV. Conclusion

For the reasons discussed, the motion to dismiss is granted as to the federal law claims. But before entering a dismissal with prejudice and a final judgment, the Court will give Balogh until December 12, 2017, to move for leave to amend the complaint (and attach a proposed amended complaint). It does not seem likely that Balogh can fix the problems with the RESPA and TILA claims, but ordinarily a plaintiff should be given a chance to amend the complaint. If no motion is filed by that date, then the Court will enter the dismissal with prejudice on the federal

claims and relinquish the state claims. The status hearing of December 19, 2017 remains in place.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 28, 2017